May it please the Court, Edward Horowitz for the Appellant Robinson Helicopter Company. I'd like to reserve three minutes for rebuttal, if I may. We've presented two independent legal grounds for reversal of this judgment. First, as you know, is the service of process under the Hague Convention treaty issue. The second relates to the statute of limitations, the applicable statute for enforcing the judgment from the People's Republic of China. Let me jump in on the personal jurisdiction issue, which I take it is where the service of process argument comes in. Because the state uniform recognition statute just has specified grounds for when cases aren't recognized. One of them is personal jurisdiction, but it doesn't say anything about service of process, right? It doesn't say anything about service of process. It just says personal jurisdiction. Service of process is not a ground under the state uniform recognition act for not recognizing a judgment, right? Among the grounds for refusing enforcement under the Uniform Enforcement Act is that there was never any personal jurisdiction to begin with. Right. That really kicks back to our argument that the service of process did not confer jurisdiction over Robinson Helicopter Company. But when I look at the personal jurisdiction section, they say, the state act says, the foreign judgment shall not be refused recognition for lack of personal jurisdiction if the defendant agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved. And my understanding was Robinson did make such an agreement. And so it seems like the personal jurisdiction prong is okay, notwithstanding whatever technical flaw there was in the service of process. Help me understand why that's not the case here. Well, first of all, the quote agreement was based on Mr. Robinson's declaration that they would, if the motion under forum nonconvenience was granted, they would submit to the jurisdiction of an appropriate court in the People's Republic of China. That there has not been an argument here that that statement or that promise or whatever precludes the argument that the service of process or an appropriate court was not effected properly under the Hague Convention. But how does that work with the language of 1713.5? Just walk me through that. Why wouldn't I just rely on 1713.5? I guess it's 3, is that A3? Saying you've agreed to submit to the jurisdiction of a foreign court with respect to the subject matter involved, which you did in the stipulation. Where does the service of process issue come into that? How does that make that prong not applicable? Well, that's the problem here. If you look at the language of the treaty, which says that this convention, this treaty, shall apply in all cases where there is occasion to transmit a judicial document for service abroad. You do not know what's put on your desk or the receptionist's desk, these papers that do not relate in any way to tell you that this is a document being served under the treaty, although that was the purpose of it. You don't know that that has anything to do with a proceeding in an appropriate court in China. You just don't know. It's just a wild document that's there. And this was attempted service of a document, a judicial document, attempted service abroad. And the treaty applies by its own language. Could you relate that, though, to the statute, to the state statute? Because I think that's what we're controlled by here. I'm sorry? Could you relate the technical noncompliance? I assume that they didn't have the summary. Could you relate that to the state statute and explain how that would cause us to say there was no personal jurisdiction or that it was otherwise a grounds for nonrecognition? I don't think there's any authority that's been cited here that if you say you will submit to the jurisdiction of an appropriate court in China, that that waives the requirement of proper service of whatever it is you want to sue them for in China. If I'm sued here in Los Angeles County and I say this is better filed in Sacramento County, so the court says, you're right, Mr. Plaintiff, go file it in Sacramento County, that means that they have to properly serve me. They just can't say, oh, come on, Mr. Horowitz, come along, let's go to Sacramento County and hand this stuff to the court there. Let me see if I understand your argument. Are you saying that notwithstanding the Uniform Recognition Act, the state act, the noncompliance with the service of process or the defect in the service of process would be an additional ground for the state court not to recognize the foreign registry? Yes, yes, yes, yes, I am. Maybe I missed Your Honor's point that it would be, but it really is part of our argument over the service under the Hague Convention that there never was a personal jurisdiction obtained. So is there a state court decision that says outside of the Uniform Act, if there is an appropriate service of process under the Hague Convention, that's another ground for nonrecognition of the foreign judgment? Yes, that would be another ground. Okay, and what's the case? And we've explained that really in our argument that the service which was attempted under the Hague Convention was ineffective. And what's the California case on that, just the case that says that? Well, the California cases say that the Hague Convention controls. It has priority over everything else, including state law, including, and in the federal cases, it should apply over a rule, Rule 4, and so forth, because this is a solemn treaty entered into by the United States government, negotiated by the executive branch, ratified by the legislative branch, and the treaty says if you want to serve a document overseas in a foreign country, you have to comply with the provisions of this. And there is a case that says that's a separate ground for nonrecognition of a foreign judgment in California? It's a separate ground, yes. Is there a case? Cite the case. I don't think there's a case. It's just the plain language says that. But on top of that, we've argued, because this was raised below, that the plaintiffs took too long to seek to enforce the judgment here. And in the process of doing that, ultimately, the California Supreme Court ultimately said in the Manco case that the original version of the California's Uniform Act referred to, you can't enforce it here anymore if it's unenforceable where rendered. And then the California Supreme Court says that was confusing. There were parts of that that were confusing California legislation. Why don't you tell me why you shouldn't be judicially stopped from arguing that the People's Republic of China judgment is unenforceable, given your prior promise to the California State Court that you would submit to the jurisdiction of the PRC courts and abide by any final judgment rendered? I mean, that disabused me of why Robinson hasn't, at every turn, tried to just use the system and cause reliance on things to, you know, I mean, they've known about the lawsuits, they've agreed to certain things, and they just, you know, they seem to be game playing. Disabused me of that. I think they're doing no more than exercising the right that any defendant would have to say, sure, I, you know, I agree, but you have to do it, particularly because there's a treaty that says this is the way you have to do it. But more importantly, I'd like to distinguish between Robinson indicating we will abide by this, they're not arguing, I think there's been some suggestion of this, but we are not arguing that we are relying on the lack of reciprocity in enforcing a judgment from China here, because China will not enforce a judgment made here in China. We're not relying on that. We basically, I agree, that what Robinson promised was, you know, we're not going to raise that. We said we'll go to China and litigate this, but we're not going to ultimately say that if a judgment is entered against us, we're going to refuse to honor it because China wouldn't honor it if it was the other way around. But we are saying, just as in any case where someone obtains a judgment, that they only have a certain amount of time to enforce it. If I promise somebody, look, I will pay you X dollars upon happening of some contingency. You give me a car. You sell me your car, I promise to pay you X dollars. You give me the car, I don't pay you. And you go into court and say, well, he promised to pay. Fine, you get a judgment against me, but that doesn't mean you can enforce it forever. And there was no waiver of that. So Robinson said to the court, if they get a judgment against me, I will pay. That's what the stipulation was. Then Hubei, or however you pronounce it, got the judgment. Robinson didn't pay. When they went to court to enforce it, you said, oh, the statute of limitations passed, so you raised a technical barrier. Why isn't that a violation of what you promised the court? Wouldn't the court have the court known about what Robinson was going to do? Wouldn't it have declined to grant the foreign nonconvenience motion? Okay. Well, let's look at it from Robinson's point of view here. They first did take steps when they were served with this, what I call a wild document. They asked their dealer in China to go to that proceeding and see what it's all about, because we don't have anything that we would be provided with if they had complied with the Hague requirements. We don't know what this is all about. So the dealer sends someone there to see what it's all about, and that person has refused admittance to the proceeding. Well, Robinson told the court that that was a convenient forum for Robinson, so why wasn't Robinson at that hearing? Well, first of all, Robinson only had five weeks' notice. How long does it take to get to China? This document was delivered, like, on February 15th, and then this hearing is, like, on March 20th. But you had told the court it was a convenient forum for you, so I guess I'm not understanding why that was a problem. I mean, that was your position in the court. Well, Robinson went to – I think they acted perfectly reasonably. They referred to – they hired a firm that had offices in the United States and in China and say, what do we have to do now? It's not as if – and they also did not know. They weren't advised. They did not know that if they went and appeared in five weeks to find out what it was all about, that they could get a continuance or anything. But if you make promises, you have to make promises with what the consequences are. Do you want to reserve the balance for rebuttal? You're under two minutes now, and then you can rebut what appellees have to say. May it please the court. Frank Rothrock. Good morning. Good morning. Let me, if I could, first address the questions that were asked about the Uniform Act and the provisions of the Uniform Act. The Uniform Foreign Money Judgment Recognition Act that applies here, the one that applies to cases filed before 2008, makes no reference to the Hague Convention. There's no requirement that service be made in accordance with the Hague Convention. Now, has the state court, has the California court said that's a separate or independent ground of non-recognition if there's non-compliance? No California court has said that in a foreign action brought against a California defendant, that service must be made in compliance with the Hague Convention. What the Uniform Act says, and it's in section 1713.4, it sets out grounds for non-enforcement. And I believe it's subdivision B1 says that one of the grounds for non-enforcement is that the defendant did not receive notice adequate to defend its interests. Here the district court found that service was made in accordance with Rule 4. In conclusion of Law 30, I think it's in the excerpts of record at page 29, the district court found that none of the grounds for non-enforcement in the Uniform Act applied here. It found Robinson received adequate notice. Robinson doesn't challenge that in its appeal. It concedes the court's finding of adequate notice under Rule 4. A couple of other points. Our position below, Robinson says we waived it by not raising it, but in fact it was one of our core positions below, was that compliance with the Hague Convention was an issue for the Chinese court to decide. Compliance with the Uniform Act was an issue for the district court to decide. I would invite the court's attention to the supplemental excerpts of record. Well, under California law, is substantial compliance with the Hague Convention sufficient for effective service? We believe it is. But we don't have a case, right? Well, we have a number of federal cases. We don't have a California case. The California cases have held that any California case served on a foreign defendant, and that would be primarily the Honda case and the Jorge G case, you need to comply with the Hague Convention. But they don't get to the issue of whether substantial compliance is sufficient or not. We have a number of federal cases that have dealt with that. Now here, the Chinese court relied on the certificate of service from the United States Central Authority. I think we need to just step back for a second and see the landscape here. Robinson chose a Chinese forum. That put us in a legal system where the courts make service, not the parties. Both the experts agreed on that. The Chinese court elected to use the Hague Convention. I think it's Article 247 of the Chinese Civil Procedure Law. They had other options to make service, but they elected to use the Hague Convention. The papers were sent to the United States Central Authority, which is the Department of Justice, to serve. There's no dispute that these two forums that Robinson says had to be served on them and that the district court found were not served on them, the request and the summary forms, were sent to the central authority. Apparently, the central authority just didn't serve them, although their process server filled out a certificate saying they did serve them. The district court found there was no prejudice from the failure to serve these forums. Robinson got adequate notice that in each due process that complies with Rule 4, and that's consistent with Article 5A of the Hague Convention. Robinson wasn't prejudiced. That's a finding by the district court that they don't challenge. The Chinese court then relied on the certificate of service, and we have a series to find compliance with the Hague Convention. We have a series of American decisions, the Eighth Circuit in Northrop, the Second Circuit in Burda. We have district court decisions, Fox, Green, Resource Trade, that have found that where the plaintiff acted in good faith, and there's no question that our plaintiffs acted in good faith, the defendant was not prejudiced, and the defendant received adequate notice. The failure, I think the district court in Resource Trade said, to comply with every jot and tittle of the Hague Convention is not fatal. Now here, the request form only goes to the central authority under Article 3. It's true that the summary form under the text of the Hague Convention is supposed to be served on the defendant, but there's no indication that the summary form would have added anything to the underlying documents which were translated in English and advised them of the dispute. And they have failed to cite, and we're not aware of a single case that's held that failure to serve the summary form when the defendant is not prejudiced, the defendant has adequate notice, the plaintiff has acted in good faith, is somehow fatal to service under the Hague Convention. Well, is judicial estoppel problematic? I don't believe it is, Your Honor, and I would submit for these reasons. I think that Robinson should be judicially estopped to challenge compliance with the Hague Convention. It chose a Chinese forum, it spurned a California state court forum, it spurned arbitration in San Francisco, it said this case should be litigated in China. Its expert witness, both the expert witnesses on Chinese law, agreed that it could go to China and challenge jurisdiction and service. It elected not to. It shouldn't be able now to say, well, we wanted to go to China, we waived our opportunity to challenge service in China, but now we get a second chance to eat the apple. That should be judicial estoppel. And with respect to enforceability, Your Honor, Robinson stipulated to abide by any Chinese judgment, to pay a Chinese judgment in return for going to China. There was nothing in its promise that said, no, we don't really mean it, if you win in China, you've still got to come to the United States and file a second action for enforcement, win at the trial level, and then win on appeal, and how would our clients in China and their Chinese lawyers reading that stipulation understand, no, they're not going to pay, you've got to bring another action in the inconvenient forum. Now, on enforceability, I would also add that I think the record demonstrates that the action to enforce the judgment that we're here on, the one brought in California, was timely because China looks to the California statute of limitations, which is ten years. The language of the first version of the Uniform Act referred to a judgment being final, conclusive, and enforceable where rendered. What does that mean? Does that mean within the geographical borders of the foreign country, or does it mean under the laws of the foreign country? The new Uniform Act, which was, I think the conference of commissioners proposed that in 2005, adopted in California in 2007, actually says that the issue of whether the foreign judgment is final, conclusive, and enforceable is to be judged under the laws of the foreign country. But what authority we have, which would be the California Senate Judiciary Committee, bill analysis, and the comments of the conference of commissioners on uniform laws, both say that there was no change, that the new statute is consistent with the old statute, that they both call for the issue of enforceability to be decided under the laws of the foreign country. I thought the new California law said that an action to recognize a foreign country judgment shall be commenced within the earlier of the time during which the foreign country judgment is effective in the foreign country. So it sounds like a geographical component. That's true, but here I don't think it would make a difference because Chinese law has separate statutes of limitations. The provision that deals with enforcement abroad in cases involving foreign elements, as our expert Professor DeLille testified in the district court of trial. But that's not enforceable in China. The question would be, should the United States be enforcing, or should California be enforcing a judgment that's enforceable under Chinese law in California, but it's not enforceable in China. Yes. And given the language that it's enforceable where rendered, which does sound perversely susceptible to geographical interpretation. It could be, but what interpretations we have, again, from the legislature in California and from the commissioners who drafted the Uniform Acts, is that that means under the laws of the foreign country. Why didn't they just say under the laws, enforceable under the laws where rendered? I don't know, Your Honor. It probably would have made life easier. The new one doesn't clarify that. The new one says in the foreign country. It does. What we do have, and these are in our, we've cited these in our brief, is the Senate bill analysis in California. In talking about enforceability, the enforceability provision in the new version of the Uniform Acts says, quote, this would be consistent with the current UFMJRA requirement that the determination as to finality, conclusiveness, and enforceability of the judgment be made using the law of the foreign country in which the judgment was entered. And we've also cited to the conference of commissioners, and they make the same observation. But again, our point would be they promised to pay. They should be judicially estopped. But moreover, if the court determines they're not judicially estopped, then under the interpretations that we have of the language in the Uniform Act, that the judgment in China was enforceable when this case was brought. Unless the court has any further questions. No, thank you for your argument. Thank you. I'll try to be very quick here. First, the Honda case referred to by counsel just now actually refutes the point he was making. The California court there said, quote, Our plaintiff cites no authority permitting a California court to authorize an action to go forward upon an invalid service or process. The fact that the person got the word is irrelevant. A California court referring to a prior case felt it could not rewrite the work of the California legislature. How much less are we able to rewrite a federal treaty on the substantial compliance or whatever? I would point out again that the treaty establishes the requirements. It repeatedly uses the word shall. It repeatedly, or the cases, California cases, the United States Supreme Court, have said this treaty is mandatory. This doesn't leave room for substantial compliance or Robinson Helicopter got the word, particularly because we're talking about jurisdiction here. And we're talking about not a record where there's a suggestion that Robinson is just making things up here to try to defer or delay paying this judgment. The judgment is secured. The judgment, there's no dispute. This money is secured. Robinson is entitled to say, hey, look, we never got the required service to give the court in China jurisdiction over us under the mandatory terms of this treaty. And for California to say otherwise or to interpret a California statute otherwise is improper. All right, you need to sum up. You've gone into overtime. Okay, if I may just say one last point here, if I may, on the enforcement. Thirty seconds. This is the tennis ball, ping pong ball case. They say, we look to you, we look to you, we look back and forth. This is not helpful in determining what the meaning of where is and where enforceable. That was explained in Manko by the California Supreme Court in terms of interpreting a California statute. And that ruling shows that our position on that is correct. And if either of our issues is correct, the judgment must be reversed. All right, thank you both for your argument. This matter will stand submitted. The last matter on calendar for argument is Paul Peschera v. City of Los Angeles 0956749.
judges: Rymer, Callahan, Ikuta